FILED ENTERED
LODGED RECEIVED
OCT 06 2026
CLERK
DISTRICT OF MARYLAND
BY nb DEPUTY

JST
LE/AL: USAO 2026R00581

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. 1:26-mj-02688-DRM |
| | * | |
| DOMINIC NOBLE | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | ******* | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Task Force Officer Daniel Vernes, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

3. I have been a sworn Police Officer in the City of Baltimore, as a member of the Baltimore Police Department ("BPD"), since 2014. Since April 2025, I have been a Task Force Officer ("TFO") with ATF, assigned to Group VII of the Baltimore Field Office. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. My duties are to both assist and/or lead investigations assigned to BPD Detectives and/or ATF Special Agents into crimes of firearm violence to include homicides and shootings.

4. Prior to becoming a TFO, I was a detective assigned to the BPD's Crime Gun Intelligence Center ("CGIC") for approximately two years, where my duties were substantially similar.

5. Prior to that position, I was assigned to the Baltimore Community Intelligence Center ("BCIC") at the Western District for approximately three years. My duties included information and intelligence gathering using open and confidential sources; crime analysis and deployment recommendations; real-time operational use of various police technologies to aid in the recovery of stolen/carjacked vehicles and apprehension of wanted persons; observing and conducting enforcement on real-time criminal activity, such as CDS distribution and firearm possession; and assisting investigative units of crimes including but not limited to, sex offenses, robbery/carjacking, and serious assaults such as non-fatal shootings and homicides.

6. Prior to that position, I was assigned to the BPD Southern District Patrol for approximately six years. The duties of this position included proactive policing to address real time criminal, civil, and traffic offenses; responding to 911 calls for service, ensuring the protection of both life and property; and conducting preliminary investigations into the crimes reported.

7. During the course of my training and experience, I have authored and executed numerous search and seizure warrants for vehicles, residences, businesses, DNA, cellular phones, social media accounts, and other digital data. Additionally, I have authored and executed search warrants and court orders related to obtaining live location records of cellular telephones, trap-and-trace/pen registers, and historical call detail records with specialty location data in reference to specific targets and broader cellular tower data. Additionally, I completed approximately 32 hours of advanced training and 40 hours of subject-matter-expert training on the Nighthawk LEOVision® data analysis application, which focuses on the mapping and analysis of Call-Detail-Records ("CDR") with location information and cross-referencing digital data from social media, cell phones, vehicle locations, and other digital data sets. I also completed a 16-hour training

course on historical cell site mapping and analysis conducted by the Federal Bureau of Investigation's ("FBI") Cellular Analysis Survey Team ("CAST"). Further, I received a 40-hour instructional course on Controlled Dangerous Substances and crimes related to these, provided by BPD.

8. I have participated in numerous investigations concerning the illegal possession of firearms, controlled substance laws, and the commission of violent crimes. I received specialized training and personally participated in various types of investigative activities, including, but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge of firearms and controlled substance laws; (c) code words and phrases used by criminals when referencing firearms and narcotics; (d) undercover operations; (e) the execution of search warrants; (f) the consensual monitoring and recording of conversations; and (g) the handling and maintenance of evidence.

9. I submit this Affidavit in support of a criminal complaint and an arrest warrant for Dominic NOBLE. Based on the facts in this Affidavit, I respectfully submit that there is probable cause to believe that NOBLE violated the following offenses: possessing firearms or ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C § 922(g) (the "SUBJECT OFFENSE").

10. This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, it does not include all the facts that I have learned during this investigation. Where the contents of documents and the actions, statements, and conversations

of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In making this Affidavit, I am relying only on the facts stated herein.

11. Information in this Affidavit does not always set forth my personal observations, but rather at times reflects information from reports or body-worn camera footage, as well as information provided to me by other law enforcement agents who observed the events described and to whom I have spoken or whose reports I have read.

**SUMMARY OF PROBABLE CAUSE**

12. On July 2, 2026, detectives assigned to the Baltimore Police Department ("BPD") were in the 200 block of N. Eutaw St. conducting an investigation. As they approached their target, detectives observed a subject later identified as Dominic NOBLE become visibly nervous as to their presence. Detectives became suspicious of NOBLE's behavior and notified additional detectives to monitor NOBLE via the BPD Citiwatch closed-circuit television ("CCTV") cameras.

13. Detectives monitoring NOBLE via CCTV observed him display characteristics of being armed and dangerous, carrying a firearm illegally about his person. Detectives with the BPD are trained in the behaviors, body mechanics, and other visible characteristics people display when carrying a firearm, especially one illegally.

14. In this case, detectives' training, knowledge, and experience alerted them when they observed NOBLE become visibly rigid and keep his arm close about his waistband area, appearing to shield or secure an item located in that area. As NOBLE walked past the police vehicle, detectives observed him appear to adjust his waistband area while walking. As the police vehicle left the area, NOBLE turned his head and appeared to monitor the police leaving the area.

15. Once the police vehicle left the immediate area, NOBLE abruptly ran and entered an alley located in the 300 Block of W. Saratoga St. NOBLE's body mechanics and behavior,

including the unprovoked flight into the alley, led detectives to believe that NOBLE entered the alley to discard contraband, such as a firearm, in the alley.

16. Upon NOBLE exiting the alley moments later, BPD Detectives arrived and exited their vehicle, some approaching NOBLE and others entering the alley NOBLE had just come from. As detectives entered the alley, NOBLE began running from the officers. Moments later, officers observed a Black Smith & Wesson MP40 pistol, serial number HVX4740, loaded with six (6) .40 caliber cartridges, including one in the chamber, laying atop the trash inside a green dumpster a short distance inside the alley. Detectives then pursued NOBLE and apprehended him in the 100 Block of Clay St.

17. Detectives obtained additional CCTV footage from the alley which showed NOBLE entering the alley and appearing to remove an object from his waistband and place it inside the same green dumpster where the detectives recovered the handgun. The video showed that no other persons interacted with the dumpster between the time that NOBLE was observed placing an item in it and the recovery of the handgun from the dumpster.

18. Additionally, prior to July 2, 2026, NOBLE had been convicted of a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined at 18 U.S.C. § 921 and, at the time that he possessed the firearms described herein, NOBLE had knowledge of the fact that he had been previously convicted of such a crime and was aware that his prior conviction was punishable by at least one year and that his civil rights had not been restored.

19. The BPD's Firearms Analysis Unit confirmed that the recovered firearm was operable. An ATF interstate nexus expert has determined that the recovered firearm and ammunition affected interstate commerce.

**CONCLUSION**

20. Based on the foregoing, I respectfully submit that there is probable cause to believe Dominic NOBLE violated 18 U.S.C § 922(g)(1). In consideration of the foregoing, I respectfully request that this court issue a criminal complaint and arrest warrant for Dominic NOBLE.

Based on the foregoing, I respectfully submit that there is probable cause to issue the requested criminal complaint and arrest warrant.

DANIEL VERNES (Affiliate)
Digitally signed by DANIEL VERNES (Affiliate)
Date: 2026.10.06 10:58:03 -04'00'

Daniel Vernes, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this 6th of October 2026.

Honorable Douglas R. Miller
United States Magistrate Judge
District of Maryland